IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH VALENTINO and DONNA )
VALENTINO, )
 )
      Plaintiffs, )
  v. ) Civil Action No. 09-1615
 )
RANGE RESOURCES - APPALACHIA, )
LLC, )
 )
      Defendant. )

MEMORANDUM and ORDER

Gary L. Lancaster,
Chief Judge.                                    May 21, 2010

      This is a breach of contract case. Plaintiffs, Joseph and Donna Valentino, claim that they executed a lease granting defendant, Range Resources - Appalachia, LLC, an exclusive interest in exploring, drilling, operating for, producing, and removing all oil and gas from their real property in exchange for, inter alia, royalty payments. Plaintiffs also contend that pursuant to a side agreement, defendant is contractually obligated to pay them a bonus in the amount of $456,800.00.[1]

      The parties do not dispute that defendant failed to pay plaintiffs $456,800.00. However, defendant argues it was never obligated to pay this amount because the side agreement does not constitute a binding contract. Defendant makes two arguments to support its theory: first, the side agreement and the lease are merely plaintiffs' offers to defendant; and second, even if the

---

[1] See, Doc. no. 1, Exh. "B".

side agreement could be construed as a contract, it contained a clause amounting to a condition precedent that went unfulfilled. According to defendant, the unfulfilled condition precedent was "management approval of the lease."[2] Defendant claims that because its management never approved the lease, and instead, sent a letter to plaintiffs notifying them that the lease had not been approved, the condition precedent was not met. Defendant concludes that because it failed to satisfy the condition precedent, no valid side agreement exists, and therefore, no payment is due. Accordingly, defendant moves for the dismissal of this breach of contract case claiming no contract exists.

Plaintiffs respond by arguing that the "management approval of the lease" clause found in the side agreement is a condition subsequent, not a condition precedent. Plaintiffs alternatively argue that even if the clause is a condition precedent, defendant fulfilled the condition. Plaintiffs also contend that the side agreement indicates defendant had to surrender the lease within ninety days from the date plaintiffs executed the lease. Plaintiffs argue that when the ninety days elapsed without defendant's surrender of the lease, the side agreement became a binding contract requiring defendant to pay the $456,800.00. Accordingly, plaintiffs urge this court to deny the motion to dismiss.

---

[2] Doc. no. 1, Exh. "B".

For the reasons that follow, we will deny the motion to dismiss.

I. BACKGROUND

We accept the following material facts as true solely for the purpose of rendering an opinion on the motion to dismiss.

Plaintiffs own 114.20 acres of land in Washington County, Pennsylvania. This parcel of land presumably contains a layer of marcellus shale, which can be a source of natural gas. Doc. no. 1, ¶¶ 7-8. Defendant was interested in entering into lease agreements with landowners to explore the layer of marcellus shale to locate, produce and extract the natural gas. Id., ¶¶ 8-9.

In June of 2008, defendant contacted plaintiffs regarding entering into a lease agreement that would enable defendant to produce the oil and gas from the marcellus shale located on plaintiffs' property. Id. In addition to defendant, other companies solicited plaintiffs in an effort to obtain a lease for the oil and gas interests, but plaintiffs signed a lease with defendant because of a large bonus payment defendant promised to pay. Id., ¶¶ 10-11. Plaintiffs describe the "bonus" as an "up-front payment" that defendant would make to plaintiffs in exchange for entering the lease. Id., ¶11.[3]

---

[3] The side agreement, drafted by defendant, also states in pertinent part, "[Defendant] pays an additional "bonus" payment to each property owner as consideration for executing the lease." Doc. no. 1, Exh. "B".

3

In July of 2008, defendant presented plaintiffs with a form lease. Id., ¶¶ 12-13. According to plaintiffs, they requested modifications to certain terms found within the lease, they engaged in negotiations with defendant through defendant's authorized representative (its "landman"), and defendant's management approved the modifications. Id., ¶¶ 14-15. Plaintiffs allege that defendant's management approved the terms of the lease prior to plaintiffs' execution of the lease. Id., ¶ 15.

Plaintiffs executed the lease agreement on August 28, 2008. Id., ¶ 16. That same day, plaintiffs also executed a side agreement for a bonus payment in the amount of $456,800.00 (the "side agreement"). Id., ¶ 17 and Doc. no. 1, Exh. "B".

The side agreement states in pertinent part:

> Thank you for entering into an oil and gas lease with our firm. We are pleased to add your property to our exploration and development program! Range Resources - Appalachia, LLC pays an initial "bonus" payment to each property owner as consideration for executing the lease. This payment is made after the lease has been properly executed by each interest owner, ... and our management approves the lease.
>
> We check to insure the proper persons have executed the lease, that the oil and gas rights are intact, and the status of other oil and gas leases that may be in term on the leased premises (a complete title examination is done by an attorney prior to drilling). Our Landman then submits the result of his check along with your lease and a detailed map of your lands to our office in Ohio for processing. In the office, your lease is reviewed by an analyst, the location is placed upon our land maps and the information is input into our computer system. Our accounting department then issues all bonus and other lease payments when due. This process helps us from erroneously making bonus payments and safeguards the

4

property owner from accepting monies which may not be theirs due to bad title, reservations of oil and gas, and other existing leases, all of which invalidate this lease. ...

<u>RANGE RESOURCES - APPALACHIA, LLC hereby agrees to pay the following oil and gas owner the amount below set forth subject to: 1) approval of title and 2)management approval of the lease:</u>

LESSOR(S): JOSEPH VALENTINO AND DONNA VALENTINO

LEASE PAYMENT AMOUNT: $456,800.00, which shall be paid to Lessor within 90 days from lease execution date, covers the lease bonus. ...

Doc. no. 1, Exh. "B" (emphasis in original).

Plaintiffs claim they refrained from marketing their property to other producers and expected to receive the $456,800.00 payment within ninety days from August 28, 2008 – the date plaintiffs executed the lease and the side agreement. Doc. No. 1, ¶¶ 18-19. Plaintiffs aver that defendant made representations leading them to believe that unless defendant surrendered the lease during those ninety days, it would pay plaintiffs the bonus payment. <u>Id.</u>, ¶19. The lease was not surrendered within ninety days from August 28, 2008, and plaintiffs did not receive the bonus payment. <u>Id.</u>, ¶20.

After ninety days passed, and in response to plaintiffs' inquiries concerning the bonus payment, defendant sent plaintiffs a letter dated December 19, 2008, stating that its "senior" management did not approve the lease. <u>Id.</u>, ¶24. This letter indicates that the factors defendant considered in rendering its

5

decision not to approve the lease "included the drastic drop in oil and gas prices, the downturn of the U.S. economy and the resulting effects on the credit markets." Doc. no. 1, Exh. "C". The letter concludes by noting, "[i]t is unfortunate that circumstances beyond [defendant's] control have caused us to come to this decision." Id. Plaintiffs' complaint suggests that contrary to these statements set forth in the letter, defendant did approve the lease as evidenced by the first two sentences of the side agreement: "Thank you for entering into an oil and gas lease with our firm. We are pleased to add your property to our exploration and development program!" Id., ¶ 26.

Plaintiffs have sued defendant for breaching the side agreement. Defendant timely filed a motion to dismiss claiming no binding lease nor side agreement exists between the parties.

II. <u>STANDARD OF REVIEW</u>

In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds on which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 at 570)). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Id. at 1949. However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555)); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), we apply the following rules. The facts alleged in the complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. We may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 556, 563 n.8. Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In short, the motion to dismiss should not be granted if plaintiff alleges facts which could, if established at trial, entitle him to relief. Id. at 563 n.8.

When deciding a motion to dismiss a court can consider a "document integral to or explicitly relied upon in the complaint" without converting the motion into one for summary judgment. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)(emphasis and internal quotation omitted). The court may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). The Court of Appeals for the Third Circuit has explained that the rationale for these exceptions is that "the primary problem raised by looking to documents outside the complaint - lack of notice to the plaintiff - is dissipated [w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint." Burlington, 114 F.3d at 1426 (internal quotation omitted).

It is on this standard that the court has reviewed defendant's motion. Based on the pleadings of record and the briefs filed in support of and opposition thereto, the court is persuaded that plaintiff has alleged facts that "raise a right to relief above the speculative level ... on the assumption that the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and emphasis omitted).

III. DISCUSSION

This case is based on diversity jurisdiction, 28 U.S.C.

§ 1332. As such, we apply Pennsylvania law. Thabault v. Chait, 541 F.3d 512, 521 (3d Cir. 2008) (a federal court sitting in diversity is required to apply the law of the state).

In Pennsylvania, a lease is a contract and "is to be interpreted according to contract principles." Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 389 (Pa. 1986)). Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999)).

Applying the Iqbal standard, this court must utilize its judicial experience and common sense to first determine whether the facts as pled by plaintiffs, if accepted as true, set forth a breach of contract claim that is plausible on its face and "permit the court to infer more than the mere possibility" that a contract existed. Iqbal, 129 S.Ct. at 1950. To prevent dismissal, plaintiffs' complaint must set out "sufficient factual matter" to show that the breach of contract claim is facially plausible. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S.Ct. at 1949). "This then allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal

quotation omitted).

Defendant first argues that plaintiffs' breach of contract claim fails because no contract existed. Defendant suggests that the documents at issue constitute plaintiffs' offers to enter into a lease and side agreement with defendant. Alternatively, defendant argues that even if the document comprising the side agreement constitutes a contract, a condition precedent in that contract went unmet.

In support of its arguments, defendant relies heavily on two Middle District of Pennsylvania cases where it sought (and obtained) dismissals. See Lyco Better Homes, Inc. v. Range Resources - Appalachia, LLC, No. 09-0249, 2009 U.S. Dist. LEXIS 110425 (M.D. Pa. May 21, 2009) and Hollingsworth v. Range Resources - Appalachia, LLC, No. 09-0838, 2009 WL 3601586 (M.D.Pa. October 28, 2009). Defendant suggests that because the Middle District granted its motions to dismiss in two factually similar cases, this court should do the same.

There is no such thing as "the law of the district." Threadgill v. Armstrong World Industries, Inc., 928 F.2d 1366, 1371 (3d Cir. 1991). As the Court of Appeals noted in Threadgill:

> Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior "resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another." Where a second judge believes that a different result may obtain,

independent analysis is appropriate.

Id. (internal citations and footnote omitted).

Accordingly, we review this case and evaluate the motion to dismiss based on its own merits and the complaint presented by plaintiffs. Because the plaintiffs' breach of contract claim and defendant's motion to dismiss begin with the side agreement, we begin our analysis with that document.

The side agreement indicates that defendant will pay "an initial 'bonus' payment to [the plaintiffs] as consideration for executing the lease." Doc. no. 1, Exh. "B".[4] This document notes that the payment will be "made after ... our management approves the lease." Id.

Defendant argues its management never approved the lease in contravention of that portion of the side agreement which unequivocally states that payment will be made after defendant's management approves the lease. Defendant points to the December 19, 2008 letter which indicates that its "senior" management did not approve the lease due to the downturn in the economy. However, plaintiffs' factual allegations set forth in the complaint indicate that defendant's management did approve the lease before plaintiffs executed it. Doc. no 1, ¶ 15. Plaintiffs allege that management

---

[4] The lease contains a separate "consideration clause" which indicates that for "consideration of $1.00 and other valuable consideration" the plaintiffs will lease their gas and oil rights to defendant. Doc. no.1, Ex. A, ¶ 1.

11

approval is evidenced by defendant's incorporation of plaintiffs' changes to the form lease and from statements in the side agreement. Id. ¶¶ 13-15, 26. Thus, whether this case survives defendant's motion to dismiss turns on what constitutes "management approval."

Defendant never defines "management approval" and the side agreement does not explicitly define that term. Defendant points to Franklin Interiors v. Wall of Fame Mgmt. Co. Inc., 511 A.2d 761 (Pa. 1986), as further support for its argument that no contract exists. In Franklin, the document at issue specifically stated, "[t]his document does not become a contract until approved by an officer of Franklin Interiors." Id. at 762. Based on this statement, Pennsylvania's Supreme Court in Franklin concluded:

> ...it is obvious that the language, "This document does not become a contract until approved by an officer of Franklin Interiors," inserted in this document by [Franklin], clearly and unambiguously required it to execute the document. This is a condition precedent to its ability to enforce any of the agreed upon terms ...

Id. at 763.

In addition tot above language being factually distinguishable from the language set forth in the side agreement, Pennsylvania's Supreme Court in a more recent decision noted:

> ...the mere presence of the signature lines [in the negotiated contract] does not determine whether the parties intended to be bound only upon the execution of the document by all the signatories. ... Instead, the inquiry is properly directed to whether the parties agreed to the terms in question and intended to be bound

12

> by the terms of the contract. Where the parties have agreed orally to all the terms of their contract, and a part of the mutual understanding is that a written contract embodying these terms shall be drawn and executed by the respective parties, such oral contract may be enforced, though one of the parties thereafter refuses to execute the written contract.

Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Bd., 739 A.2d 133, 138 (Pa. 1999) (internal citations and quotations omitted). The court held that unlike Franklin, there was no written term which required signatures for the formation of a valid contract.

Because there is no term in the side agreement which requires signatures, and because there is no definition of "management approval", plaintiffs' allegations and the documentation supporting plaintiffs' allegations suggesting management approval had occurred, provide the requisite facts, if accepted as true, to set forth a breach of contract claim that is plausible on its face and permit the court to infer more than the mere possibility that a contract existed.

We recognize that while it is plausible that the side agreement could be a binding contract, it will only bind the parties if defendant's management approved the lease. We note that under Pennsylvania law, a lease of real property for a term of more than three years must be made in writing and signed by the parties creating the lease, which would include defendant. 68 Pa. Stat. Ann. § 250.202. Here, the lease attached to plaintiffs' complaint,

13

was written, for a term of more than three years, and appears to be signed by plaintiffs, but not by defendant.

However, the statute of frauds issue is not one this court may consider during the motion to dismiss stage. See <u>Flight Systems v. Electronic Data Systems Corp.</u>, 112 F.3d 124, 128 (3d Cir. 1997) (denying motion to dismiss in lease case because "Pennsylvania courts have declared that the purpose of the statute of frauds is to shield persons with interests in land from being deprived of those interests by perjury, not to arm contracting parties with a sword they may use to escape bargains they rue").

IV. <u>CONCLUSION</u>

Therefore, in conclusion, we find the allegations set forth in plaintiffs' complaint along with the documents attached to the complaint do more than establish the threadbare recitals of a breach of contract cause of action. Thus, because plaintiffs have set forth sufficient factual matter to show that the breach of contract claim is facially plausible, the motion to dismiss must be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH VALENTINO and DONNA )
VALENTINO, )
)
Plaintiffs, )
v. ) Civil Action No. 09-1615
)
RANGE RESOURCES - APPALACHIA, )
LLC, )
)
Defendant. )

ORDER

AND NOW, this 21 day of ~~April~~ May, 2010, IT IS HEREBY ORDERED that defendant's motion to dismiss is denied.

BY THE COURT:

_____, C. J.

cc: All Counsel of Record

15